**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

X-------------------------------------------------------X

**JULIA JOHN,**

       Plaintiff,                                   Index No. 1:25-CV-03949-LTS

         v.                                   **COMPLAINT**

                                              **JURY DEMAND**

**CITY OF NEW YORK, NYPD OFFICER
CHRISTOPHER DAGUANNO
(TAX ID #957506), NYPD SERGEANT KHURRAM
ZUBAIR (TAX ID #962891), JOHN DOES 1–3,**

       Defendants.

X-------------------------------------------------------X

Plaintiff Julia John, by her attorney, alleges as follows:

**PRELIMINARY STATEMENT**

1. This action arises from the unlawful stop, racial profiling, excessive force, warrantless search, and false arrest of Plaintiff, a Black woman, on February 10, 2024, at approximately 7:44 PM near 890 Quincy Street, Brooklyn, by NYPD Officer Christopher Daguanno, Sergeant Khurram Zubair, and multiple additional unidentified NYPD officers.

2. Defendants seized Plaintiff without reasonable suspicion, arrested her without probable cause, and escalated force during a non-criminal traffic encounter, in violation of clearly established constitutional rights.

3. Even if Defendants' purported basis for the stop had been justified —which Plaintiff denies— given the facts known to the Defendant NYPD officers here, New York law required them to issue a Desk Appearance Ticket ("DAT") under CPL §150.20 and other statutes. A custodial arrest was legally prohibited.

4. Defendants also conducted an unjustified, warrantless, non-inventory search of Plaintiff's vehicle despite also lacking consent to search.

5. Defendants also subsequently and unlawfully arrested Plaintiff without probable cause to believe she had committed any criminal offense.

6. Based upon information and belief, Defendants' conduct was motivated, in whole or in part, by racial animus and bias-based assumptions associated with Plaintiff's identity as a Black woman.

7. Plaintiff suffered physical injuries (including ongoing hip and back pain), humiliation, emotional distress, and a significant deprivation of liberty.

8. Independent attorneys at the Legal Aid Society contemporaneously filed a CCRB complaint documenting excessive force, improper arrest, unlawful search, and racial profiling and bias-based policing by Defendants.

9. Upon information and belief, Plaintiff's criminal case was later dismissed and sealed pursuant to CPL §160.50.

10. These constitutional violations were caused by the City of New York's ongoing failure to train, supervise, and discipline NYPD officers regarding (a) lawful traffic-stop practices, (b) racial profiling and biased policing, (c) lawful search and seizure practices, including arrest and (d) proportional use of force.

11. Plaintiff timely filed a Notice of Claim with the City of New York on May 10, 2024.

12. Plaintiff submitted to a 50H hearing that occurred on or about March 20, 2025.

**JURISDICTION & VENUE**

13. This action arises under 42 U.S.C. §§1981 and 1983. Jurisdiction is proper under 28 U.S.C. §§1331 and 1343.

14. Venue is measured under 28 U.S.C. §1391.

**PARTIES**

15. Plaintiff Julia John is a resident of Kings County, New York.

16. Defendant City of New York operates and supervises the NYPD.

17. Defendant Officer Christopher Daguanno was an NYPD officer acting under color of law.

18. Defendant Sergeant Khurram Zubair was an NYPD supervisor acting under color of law.

19. John Does 1–5 are unidentified NYPD officers who participated in the stop, force, search, detention, or arrest of Plaintiff.

## FACTUAL ALLEGATIONS

### A. Lack of Reasonable Suspicion for the Stop

20. On February 10, 2024, Plaintiff lawfully drove her vehicle when Officer Daguanno and Sergeant Zubair stopped her without reasonable suspicion of any traffic violation or criminal activity.

21. Plaintiff was compliant, respectful, and fully cooperative.

22. Plaintiff committed no infraction, posed no threat, and was not impaired.

23. Plaintiff believes that the NYPD body-worn camera ("BWC") footage should show such facts.

### B. Escalation and Excessive Force

24. Officers aggressively approached Plaintiff's vehicle, shouting commands without explanation or justification.

25. Despite Plaintiff's cooperation, officers slammed her into her vehicle, forcibly twisted her arms behind her back, and tightly handcuffed her, causing immediate and enduring pain.

26. When Plaintiff attempted to use her phone to record—which she had every legal right to do — officers slapped it out of her hand.

27. Plaintiff's companion -- who also attempted to record this interaction -- was also yelled at and ordered away as officers escalated the encounter.

28. Several bystanders witnessed the assault and yelled for officers to stop their improper use of force.

29. The officers' actions were inconsistent with **NYPD's P.G. 221-01 Use of Force Guidelines**, which require **de-escalation** and the use of **proportional force** based on the situation. Officers failed to utilize any de-escalation tactics despite the lack of threat or resistance from Plaintiff.

30. Plaintiff suffered hip and back injuries requiring medical attention and continuing pain.

### C. Lack of Probable Cause for Arrest and Mandatory DAT

31. Plaintiff was arrested for allegedly driving with a suspended license or permit.

32. Officers failed to conduct any substantive investigation, including whether Plaintiff ever received legally required DMV notice of any suspension.

33. Before arresting her, Officers did not verify whether the DMV database reflected proper service; had they done so, they would have learned Plaintiff had no notice of any suspension.

34. Defendants nevertheless seized, searched, handcuffed, detained, transported, processed, and fingerprinted Plaintiff, causing a substantial deprivation of her liberty.

35. Even assuming arguendo a suspension existed, CPL §150.20 and other New York statutes required issuance of a DAT instead of custodial arrest for the alleged offense.

36. Defendants violated **CPL 150.20**, which mandates the issuance of a **Desk Appearance Ticket** for non-felony offenses, including the one at issue here. Given the lack of any applicable exceptions, the officers' failure to issue a DAT rendered the arrest unlawful.

37. Plaintiff was held for hours before finally being released with a DAT—which should have been issued immediately, not after this illegal detention.

**D. Unlawful Search of Plaintiff's Vehicle**

38. Without consent, without probable cause, and without a warrant, Defendants searched Plaintiff's vehicle.

39. The vehicle was not impounded, eliminating any basis for an inventory search.

40. Defendants' search violated well-established Fourth Amendment principles.

41. Defendants' search of Plaintiff's vehicle also violated **P.G. 208-05** (NYPD search policies), which require that searches must be **based on probable cause** or a **warrant**, none of which applied here.

**E. Racial Profiling and Discriminatory Treatment**

42. Plaintiff is a black woman.

43. Officers' hostility, escalation, force, and refusal to issue a DAT were motivated, in part, by discriminatory beliefs, assumptions, or bias.

44. Defendants' actions were inconsistent with **NYPD's P.G. 208-01 Bias-Based Policing Policy**, which prohibits racial profiling. Plaintiff's treatment was discriminatory, as evidenced by the escalation of force and arrest despite her compliance and the lack of any legitimate criminal activity.

45. A CCRB complaint submitted by Legal Aid attorneys specifically identified the stop, force, and arrest as racial profiling and bias-based policing.

46. Non-Black motorists in comparable situations are not subjected to custodial arrest, warrantless searches, or force for non-criminal traffic matters.

**F. Liberty Deprivation and Emotional Harm**

47. Plaintiff was detained for several hours, deprived of her liberty, publicly humiliated, and left visibly shaken by the encounter.

48. She continues to experience anxiety when encountering police.

49. As a direct result of Defendants' unlawful conduct, including the excessive force, unlawful detention, and racial profiling she experienced, Plaintiff continues to experience severe **anxiety** when encountering police, and her physical pain from the excessive force has **impaired her mobility, possibly permanently**. The trauma from this experience has severely impacted her ability to engage in daily activities, exacerbating her emotional distress.

**G. Officer Training, Supervision, and Knowledge**

50. Defendant Sergeant Khurram Zubair was, at all relevant times, a supervisory officer of the New York City Police Department, holding the rank of Sergeant and assigned to the 81st Precinct.

51. Upon information and belief, public NYPD records reflect that Sergeant Zubair completed approximately 379 NYPD training courses over roughly ten years (from about 2015 through 2025), averaging more than thirty-five courses per year, including training shortly before and after the incident at issue.

52. Those trainings included repeated instruction concerning investigative encounters and stop-question-frisk standards; traffic stops and car-stop tactics; Desk Appearance Ticket eligibility and the distinction between summonses and custodial arrests; use-of-force limitations and restraint/prohibited methods; supervisory responsibilities and tactical leadership; bias-free policing; and officers' constitutional obligations.

53. Public NYPD records further reflect that Officer Christopher Daguanno has received extensive recurring training since 2015, taking over 550 training courses in investigative encounters, the Right to Know Act, use-of-force policy updates, body-worn camera policy, de-escalation/ICAT modules, DAT processing guidance, and related procedural and constitutional limits among other subject matters.

54. As a result of this extensive and continuous training, Defendants Zubair and Daguanno knew or should have known that the stop, force, search, and custodial arrest inflicted upon Plaintiff violated clearly established constitutional rights; nevertheless, they directly participated in, authorized, ratified, and/or failed to intervene to prevent the unconstitutional conduct alleged herein, demonstrating reckless disregard for Plaintiff's rights and supporting punitive damages.

**H. Monell and Supervisory Liability**

55. The City of New York has maintained a pattern of failure to properly train and supervise officers on the proper use of **Desk Appearance Tickets**, **racial profiling**, **reasonable force**, and **search and seizure limitations**. Specifically, **annual NYPD training records** reflect inadequate instruction on **CPL 150.20** and **proper handling of racial bias incidents**, which contributed to the constitutional violations in this case.

56. **CPL 150.20** stipulates that a **police officer** shall issue an **appearance ticket** instead of making a custodial arrest for offenses not requiring immediate arrest, **unless exceptions apply** (e.g., prior failure to appear in court, need to identify of the accused and any outstanding warrants).

57. Sergeant Zubair, as a supervisor on scene, directly participated in, directed, and/or failed to stop or correct the constitutional violations, and had a realistic opportunity to intervene.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – 42 U.S.C. §1983 (False Arrest / Unlawful Seizure)

58. Plaintiff repeats and realleges paragraphs 1–47 as if fully set forth herein.

59. Defendants seized and arrested Plaintiff without reasonable suspicion and without probable cause, violating the Fourth and Fourteenth Amendments.

### SECOND CAUSE OF ACTION – 42 U.S.C. §1983 (Excessive Force)

60. Plaintiff repeats and realleges paragraphs 1–47.

61. Defendants used objectively unreasonable force, including slamming Plaintiff against her vehicle and applying overly tight handcuffs.

### THIRD CAUSE OF ACTION – 42 U.S.C. §1983 (Unlawful Search)

62. Plaintiff repeats and realleges paragraphs 1–47.

63. Defendants searched Plaintiff's vehicle without a warrant and without any applicable exception, violating the Fourth and Fourteenth Amendments.

### FOURTH CAUSE OF ACTION – 42 U.S.C. §1983 (Equal Protection / Racial Profiling)

64. Plaintiff repeats and realleges paragraphs 1–47.

65. Defendants subjected Plaintiff to discriminatory enforcement, force, and arrest on account of race, violating the Equal Protection Clause.

### FIFTH CAUSE OF ACTION – 42 U.S.C. §1983 (Failure to Intervene)

66. Plaintiff repeats and realleges paragraphs 1–47.

67. One or more Defendants had a realistic opportunity to prevent the unlawful seizure, excessive force, and unlawful search, and failed to do so.

### SIXTH CAUSE OF ACTION – Monell Liability (City of New York)

68. Plaintiff repeats and realleges paragraphs 1–47.

69. The constitutional violations were caused by City policies, customs, and/or deliberate indifference in training, supervision, discipline, and DAT enforcement.

**SEVENTH CAUSE OF ACTION – 42 U.S.C. §1981 (Race Discrimination)**

70. Plaintiff repeats and realleges paragraphs 1–47.

71. Defendants' discriminatory conduct interfered with Plaintiff's ability to maintain and enforce contractual and economic relationships, including employment and financial interests adversely affected by her unlawful arrest.

**EIGHTH CAUSE OF ACTION – New York City Human Rights Law (NYCHRL) (Race Discrimination)**

72. Plaintiff repeats and realleges paragraphs 1–47.

73. Defendants treated Plaintiff less well than others because of her race, in violation of the NYCHRL.

**NINTH CAUSE OF ACTION – Assault and Battery (New York Common Law)**

74. Plaintiff repeats and realleges paragraphs 1–47.

75. Defendants intentionally used unlawful force and offensive physical contact without justification.

**TENTH CAUSE OF ACTION – Negligent Hiring, Training, and Supervision (City of New York)**

76. Plaintiff repeats and realleges paragraphs 1–47.

77. The City negligently hired, trained, supervised, and/or retained officers who were unfit to perform their duties lawfully.

**ELEVENTH CAUSE OF ACTION – Negligent Infliction of Emotional Distress**

78. Plaintiff repeats and realleges paragraphs 1–47.

79. Defendants' conduct unreasonably endangered Plaintiff's safety and caused severe emotional distress.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants for compensatory damages, punitive damages (against the individual Defendants), attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

Dated: January 12, 2026

New York, New York

Respectfully submitted,

Kent Gubrud, Esq.
Attorney for Plaintiff
315 Madison Avenue #3055
New York, New York 10017
(212) 968-8818  KentGubrud@fastmail.com